LYMAN F. HURLBURT et al., as Administrators, Appellants, *v.* ELLA A. HURLBURT, as Administratrix, Respondent.

The provision of the Code of Civil Procedure (§ 835) prohibiting an attorney from disclosing professional communications made to him by his client does not apply, as between the parties, to communications made by two or more persons in consultation with an attorney for their mutual benefit; it cannot be invoked in any litigation which may thereafter arise between such persons, although *it seems* it may in a litigation between them and a stranger.

Where testimony of the attorney as to communications so made would have been competent in an action between such persons, it is also competent in an action between their personal representatives as such; and this, although the parties to the latter action are personally interested.

The declarations of a testator or intestate, binding him or binding and impairing his estate, may be given in evidence against his personal representatives, in all cases where they would have been competent against himself, if he had been living and a party to the action.

The mere intimation of an opinion by a judge upon the evidence or upon the merits of the case, or his comments upon the evidence, although unfavorable to one of the parties, while it may be ground for setting aside the verdict on motion, furnishes no ground for a reversal in this court, where the case was submitted to the jury upon a charge which laid down no improper rule of law.

Where the court below has refused to set aside the verdict and has affirmed the judgment entered thereon, in the absence of any errors of law properly excepted to, the case is not reviewable here.

(Argued October 6, 1891; decided October 13, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered June 2, 1890, which denied a motion for a new trial made by plaintiffs on exceptions ordered to be heard in the first instance at General Term, and directed judgment on a verdict in favor of defendant.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles McLouth* for appellant. It was error for the court to permit David S. Aldrich, an attorney and counsellor, to state the conversation that took place between plaintiff's intestate and him, as the communications made to him were privileged. (Code Civ. Pro. § 835 ; *Bacon* v. *Frisbie,* 15 Hun, 26; 80 N. Y. 394; *Root* v. *Wright,* 84 id. 72 ; *Gates* v. *Olmstead,* 56 id. 632 ; *Williams* v. *Fitch,* 18 id. 551 ; *Britton* v. *Lorenz,* 45 id. 51 ; *People* v. *Graham,* 63 Barb. 483 ; *Loder* v. *Whelpley,* 111 N. Y. 48, 239 ; *Halcomb* v. *Halcomb,* 95 id. 316 ; *In re O'Neil,* 7 N. Y. Supp. 107 ; 27 Hun, 331 ; 40 id. 91 ; *Grattan* v. *M. Ins. Co.,* 60 id. 281 ; *Edington* v. *M. L. Ins. Co.,* 67 id. 185 ; *Weston* v. *A. L. Ins. Co.,* 2 How. [N.

C.] 184; 99 N. Y. 56; Rapalje on Witnesses, § 271.)    The court erred in admitting declarations of plaintiff's intestate that were not material to the issue being tried. (*Stephens* v. *Vrooman*, 16 N. Y. 381, 384; 61 Barb. 294; 47 id. 384.) The court erred in permitting the witness, Mrs. Langdon, to contradict Lyman Hurlburt as to a matter immaterial and collateral. (Rapalje on Witnesses, §§ 203–209; *Crouse* v. *Fitch*, 1 Abb. Ct. App. Dec. 475; 6 Abb. [N. S.] 185; 14 Abb. Pr. 346; 23 How. 350.)    The exceptions to the charge, as to specific subjects, expressions of the trial judge, subjects spoken of, and the evidence given by certain witnesses upon certain matters, are pointed out with all the particularity that can be done. (*People* v. *Livingston*, 79 N. Y. 279; *McGinly* v. *U. S. L. Ins. Co.*, 77 id. 495.)

*S. B. McIntyre* for respondent.    The declarations of an intestate are always admissible against his administrator, or any other claiming in his right. (1 Greenl. on Ev. § 189; *Schenck* v. *Warner*, 37 Barb. 258; *Sherman* v. *Scott*, 27 Hun, 331; *Whiting* v. *Barney*, 30 N. Y. 330; *Root* v. *Wright*, 21 Hun, 347; *Hebbard* v. *Hanghian*, 70 N. Y. 54; *Rosenberg* v. *Rosenberg*, 40 Hun, 91; *Brennan* v. *Hall*, 14 N. Y. Supp. 864; *Earl* v. *Lefler*, 46 Hun, 9; *Quinby* v. *Strauss*, 90 N. Y. 664; *Foot* v. *Beecher*, 78 id. 155; *Newton* v. *Harris*, 6 id. 345; *Starks* v. *People*, 5 Den. 108; Code Civ. Pro. § 995.) There is no exception to any specific proposition of the charge, or to any particular remark of the trial justice, in such manner as to show what was intended. (*McGinley* v. *U. S. Ins. Co.*, 77 N. Y. 495; *Jones* v. *Osgood*, 6 id. 235; *Lansing* v. *Wiswall*, 5 Den. 218, 219; *Arnold* v. *People*, 75 N. Y. 603; *Chipman* v. *Palmer*, 9 Hun, 518; *Groat* v. *Gile*, 51 N. Y. 431; *Oldfield* v. *N. Y. & H. R. R. Co.*, 14 id. 310, 313, 314, 315.)

Earl, J.    This action was brought to recover the sum of $6,682, with interest thereon, which it is alleged Charles F. Hurlburt, the plaintiffs' intestate, placed in the hands of his

son Theron, defendant's intestate, as his agent, and for his benefit, in the latter part of the year 1881.   Theron was a son of Charles, and he died December 25, 1883, and Charles died January 6, 1884.

The defendant claimed that the money was a gift to her husband, and that he was never under any obligation to repay the same.   The plaintiffs were unable to produce any writing of any kind evidencing any obligation on the part of Theron to repay the money.   They are the sons of Charles, and were the sole witnesses to establish their claim, and this they attempted to do by testifying to certain conversations which they overheard between their father and Theron.

Upon the trial the defendant rested her case mainly upon the conceded fact that for about two years before the death of her husband the money claimed had been in banks to his credit, and had been managed and controlled by him, and she produced proof of certain declarations and admissions made by Charles tending to show that the money was transferred by him to his son as a gift, and not to be held for his benefit.

During the progress of the trial the plaintiffs made objections to evidence, which were overruled, and they now claim some of the rulings were erroneous.   We will briefly notice some of them.

Theron and Charles in the spring of 1883, went together to consult a lawyer by the name of Aldrich as to the best mode of disposing of or adjusting the prospective interest of the plaintiff Lyman, as an heir, in the farm belonging to his father, and several plans were suggested by Theron in the presence of his father, and assented to by him to accomplish that end. The statement was there made by Theron to the lawyer, and assented to by his father, that Lyman had had all his share in his father's personal property; and other statements were there made by Theron and assented to by his father, of similar import.   Aldrich was called by the defendant to prove these statements and admissions.   The plaintiffs objected to his evidence on the ground that he was an attorney consulted professionally, and that the communications to him were

privileged. The court overruled the objection and received the evidence.

We think that in receiving this evidence there was no violation of section 835 of the Code, which provides that "an attorney or counsellor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment." This section is a mere re-enactment of the common-law rule and it cannot be supposed from the general language used that it was intended to change or enlarge that rule as it had been expounded by the courts. It has frequently been said that the object of the rule embodied in the section is to enable and encourage persons needing professional advice to disclose freely the facts in reference to which they seek advice, without fear that such facts will be made public to their disgrace or detriment by their attorney. Such a case as this is plainly not within the rule. Here Theron and his father were both interested in the advice which they sought, and they were both present at the same time and engaged in the same conversation. Each heard what the other said, so that the disclosures made were not, as between them, confidential; and there can be no reason for treating such disclosures as privileged. It has frequently been held that the privilege secured by this rule of law does not apply to a case where two or more persons consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons, but can be in a litigation between them and strangers. (*Root* v. *Wright*, 21 Hun, 347; *Sherman* v. *Scott*, 27 id. 331; *Foster* v. *Wilkinson*, 37 id. 244; *Rosenburg* v. *Rosenburg*, 40 id. 91; *Whiting* v. *Barney*, 30 N. Y. 330; *Hebbard* v. *Haughian*, 70 id. 54; *Root* v. *Wright*, 84 id. 72.) Therefore, if Charles and Theron had been alive and parties to this action, this evidence would have been competent. And as it would then have been competent it is equally competent in this action between their personal representatives. The fact that these plaintiffs are personally interested in the estate of their father can make no difference in the application of the rule. They are parties to

this action only in a representative capacity. They legally stand as the representatives of their father and no one else. Evidence which would have been competent against him in his life-time is competent against his personal representatives. So we think that this case is not within the reason of section 835 and even if it should be regarded as within its letter, it should be taken out of the letter by the application of the familiar maxim " *Cessante ratione legis cessat ipsa lex.*"

Several witnesses were permitted to give evidence of declarations made by the plaintiffs' intestate tending to show that he had made a gift of this money to his son, and this evidence was objected to by the plaintiffs as incompetent. It is familiar law, for which no citation of authorities is needed, that the declarations of a testator or intestate binding him or binding or impairing his estate, may be given in evidence against his personal representatives in all cases where they would have been competent against himself if he had been living and a party to the action. His executor or administrator represents him and stands in his place, and his declarations admitting a debt or obligation, or tending to discharge a debt or obligation due him, or to impair his estate in any way, are competent in any litigation to which his personal representatives are a party. Therefore, the evidence of material admissions made by Charles in his life-time were competent against these plaintiffs.

It is further claimed that much of the evidence thus received was wholly immaterial, and should, therefore, have been excluded. We have carefully scrutinized the evidence, and while much of it has but a slight and remote bearing upon the case, yet we cannot say that any of it was wholly immaterial. It was competent for the defendant to prove the relations between Theron and his father, and to some extent, the dealings between them, and the relations between the father and the different members of his family.

Complaint is made of the charge of the judge. Our attention is called to no erroneous rule of law laid down by him, and the most that can be said is that the charge shows a significant leaning in favor of the defendant, and that the judge

was strongly impressed with the merits of the defendant's case. But the mere intimation of an opinion by the judge upon evidence, or upon the merits of the case, or his comments upon the evidence, though unfavorable to the party complaining, furnish no ground for a reversal here, so long as the whole case is submitted to the jury upon a charge which lays down no improper rule of law. If a judge in his charge to the jury uses such language as to improperly bias their judgments or influence their verdict, that may be ground for the court below, upon a motion for a new trial, to set aside the verdict, if satisfied that injustice has been done. But upon an appeal to this court where the court below has refused to set aside the verdict and has affirmed the judgment entered thereon, we can review only errors of law which have been properly excepted to.

A careful examination of the whole case leads us to the conclusion that the exceptions of the plaintiffs point out no legal error, and that there is no ground for a reversal of the judgment.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.